UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,

    v.

THIRTY-SIX (36) 300CC ON ROAD SCOOTERS
MODEL WF300-SP, et al.,

        Defendants.

CASE NO. 2:11-CV-130
JUDGE EDMUND AL. SARGUS, JR.
Magistrate Judge Mark R. Abel

## OPINION AND ORDER

This matter is before the Court on Claimant's Motion for Summary Judgment. (Doc. No. 12.) For the reasons that follow, the Court **DENIES** Claimant's motion.

## I. BACKGROUND

Claimant Snyder Computer Systems, Inc. dbaWildfire Motors, is an Ohio corporation with its principal place of business in Steubenville, Ohio. (Douglas Don Snyder[1] Aff. ¶ 2; Doc. No. 12-1.) The Claimant is in the business of, among other things, designing, importing, and selling diverse merchandise, some of which include internal combustion engines. *Id.* A substantial part of the Claimant's products are designed by Wildfire Motors, manufactured to order in China, and imported into the United States. *Id.* The Claimant is the owner of each of the defendant road scooters ("defendant merchandise") in this action. *Id.* ¶ 12.

The United States Customs and Border Protection ("CBP") is tasked with inspecting merchandise sought to be imported into the United States. CBP may refer the shipment to a

---

[1] Mr. Synder is a principal in Synder Computer Systems. Inc. dba Wildfire Motors and manages the day-to-day operations. (Snyder Aff. ¶ 1.)

relevant agency for inspection or may inspect it itself. In the instant action, CBP detained the defendant merchandise at the Port of Cleveland Ohio. CBP utilized the United States Environmental Protection Agency ("EPA") and the United States Department of Transportation ("DOT") to inspect the defendant merchandise.

The EPA is charged with drafting regulations to enforce the Clean Air Act, 42 U.S.C. § 7401 *et seq.*, and is responsible for assisting in the inspection of merchandise sought to be imported for possible violations of the Clean Air Act. Similarly, the DOT, National Highway Transportation Safety Administration ("NHTSA") is charged with drafting regulations to enforce the National Highway Traffic Safety Act, 49 U.S.C. § 30101, *et seq.*, and is responsible for assisting in the inspection of vehicles sought to be imported into the United States for compliance with those regulations.

The first shipment of the defendant merchandise was seized at the Port of Cleveland Ohio on June 18, 2009. On August 28, 2009, the Claimant made a "Proposed Settlement Offer" to counsel at the EPA concerning the alleged violations of the Clean Air Act by the defendant merchandise. (Doc. No. 15, Ex. 1.)

On September 9, 2009, the Claimant filed the first of five lawsuits related to the defendant merchandise. The first case, filed in the Northern District of Ohio, sought immediate return of the property. (Case No. 1:09-cv-02074-DAP.) That case was dismissed, with the agreement of the parties. Between August 28, 2009 and April 19, 2010, the Claimant and its counsel continued to communicate with EPA personnel in an attempt to reach an Administrative Settlement Agreement. Ultimately, no agreement was reached.

Administrative forfeiture actions against the defendant merchandise were initiated

2

between September 21, 2009 and September 28, 2009. (Decl. of Tessie Douglass[2] ¶¶ 11; Doc. No. 2 at 45.) On October 19, 2009, the Claimant submitted a cost bond to stay the administrative forfeiture. *Id.* ¶ 12. The defendant merchandise was then referred to the United States Attorney's office by CBP's Office of General Counsel on April 13, 2010 to be evaluated for a civil forfeiture action. *Id.* ¶15.

On February 22, 2010, the Claimant filed suit in this Court [3] (Case No. 2:10-cv-161) naming the Secretaries of the Department of Transportation and Homeland Security, seeking declaratory and injunctive relief which would have the effect of releasing the defendant merchandise. (Doc. No. 1; 2:10-cv-161.) On March 16, 2010, the Claimant filed the First Amended Complaint and added the Administrator of the EPA as a party defendant. (Doc. 15; 2:10-cv-161.) In addition to naming the Administrator of the EPA as a defendant, the First Amended Complaint specifically sought return of most of the defendant merchandise. In the First Claim of the First Amended Complaint, it was alleged that the Claimant's due process rights had been violated by the agencies' failure to "act within a reasonable time with respect to the detention and seizure of property." *Id.* ¶16.

On August 10, 2010, this Court dismissed the first seven claims of the First Amended Complaint, leaving only the equitable claim seeking the filing of a civil forfeiture action. (Doc.

---

[2]Ms. Douglass is the Fines, Penalties, and Forfeitures Officer of the Fines, Penalties and Forfeitures Office of CBP in Cleveland, Ohio. (Douglass Decl. ¶ 1.)

[3]In addition to the actions filed against the agencies, claimant also filed three separate personal liability cases, pursuant to *Bivens v. Six Unknown Agents*, 403 U.S. 388 (1971), against two EPA lawyers and a CBP inspector. All of those cases were subsequently voluntarily dismissed by the Claimant. *Snyder Computer vs. Meetu Kaul*, 2:10-cv-1076, S.D. Ohio, filed November 30, 2010; *Snyder Computer vs. David Alexander*, 2:11-cv-0332, S.D. Ohio, filed April 19, 2011; *Snyder Computer v. Meetu Kaul*, 2:11-cv-0611, W.D. Pa., filed May 6, 2011.

42; 2:10-cv-161.) The Court denied the due process claim, concluding that the Claimant's property interest in the seized merchandise would be protected in a forfeiture hearing. *Id.* at 9-10.

On February 11, 2011, the Government initiated the instant action by filing a Verified Complaint for Forfeiture. (Doc. No. 2.) The substantive NHTSA and/or EPA violations are detailed in the declarations of Stuart Siegel of NHSTA and Anne Wick of the EPA which outline how the defendant merchandise fails to comply with NHSTA and/or EPA regulations. The Complaint requests that the merchandise be forfeited to the United States. *Id.*

On February 17, 2011, Magistrate Judge Terence P. Kemp found that there was probable cause to believe that the defendant property violated the Clean Air Act and the National Traffic and Motor Vehicle Safety Act of 1966, as amended. (Doc. 4, Warrant of Arrest *In Rem*.)

On August 11, 2011, six months after the initiation of the instant forfeiture action, the Claimant filed its Second Amended Complaint in Case Number 1:10-cv-161. (Doc. 66; 2:10-cv-161.) In the Second Amended Complaint, claimant re-cast its earlier arguments that had been dismissed in part on August 10, 2010 (Doc. No. 42; 2:10-cv-161), and requested additional relief beyond initiation of a forfeiture action as originally requested. On November 9, 2011, this Court dismissed as moot the entire case. (Doc. No. 75, 2:10-cv-161.) The Claimant has filed a Notice of Appeal from that dismissal and the Court's earlier dismissal order. (Doc. No. 76; 2:10-cv-161.)

On November 14, 2011, the Claimant filed its Motion for Summary Judgment in the instant action. (Doc. No. 12.) On December 22, 2011, the Government opposed that motion (Doc. No. 15), and on January 6, 2012, the Claimant filed a reply in support of its motion (Doc.

4

No. 17.)  That motion is now ripe for review.

## II. STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  The Court may therefore grant a motion for summary judgment if the nonmoving party who has the burden of proof at trial fails to make a showing sufficient to establish the existence of an element that is essential to that party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  A genuine issue of material fact exists if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Liberty Lobby, Inc.*, 477 U.S. at 248; *see also Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (the requirement that a dispute be "genuine" means that there must be more than some metaphysical doubt as to the material facts").  "The evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255 (citing *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 158-59 (1970)).

## III. ANALYSIS

The Claimant moves for summary judgment and return of the defendant merchandise based on its contention that it was denied statutory and constitutional due process because:  (1) the Government failed to provide a pre-seizure hearing; (2) the unreasonable length of the delay between the defendant merchandise's entry into the United States and the filing of the forfeiture action; and, (3) the Government's failure to deliver adequate Notices of Detention outlining the nature of the violations, pursuant to 19 U.S.C. §1499.

5

## A. Pre-Seizure Hearing

The Claimant admits that there is no statute nor any case law on point to support its contention that the Government is required to provide a pre-seizure hearing before seizing goods being imported into the United States. Instead, the Claimant relies on *Fuentes v. Shevin*, 407 U.S. 67 (1972) for the proposition that pre-seizure hearings are required unless extraordinary circumstances make a pre-seizure hearing impractical. As the Government correctly explains, however, *Fuentes* is not a forfeiture action, and instead, is a case in which private action was authorized to deprive a person of property rights. No statute or regulation requires a pre-seizure hearing where, as here, there were questions about the lawful admissibility into the United States of the defendant merchandise.

Even if the Court were to apply *Fuentes*, that case does not outlaw all seizures without notice and hearing. The circumstances which the *Fuentes* Court held permit seizures without notice and pre-seizure hearing are those where (1) the seizure was necessary to secure an important governmental or public interest; (2) prompt action is necessary; and, (3) the seizure is initiated by a government official under statutorily drawn standards that justified the seizure. 407 U.S. at 91. The Government posits that this case meets the *Fuentes* exception because:

> The defendant merchandise was part of a number of shipments arriving at various ports around the United States, all originating in China, which raised serious concerns about claimant's compliance with federal regulatory schemes meant to protect the health and safety of citizens. The number and volume of merchandise (23 classes of goods totaling 1,771 items in this case) required reasonably prompt action by the various federal agencies. The seizures were all carried out by CBP with input from both EPA and DOT pursuant to their interpretation of their own regulations.

(Doc. No. 15 at 12.)

6

The Government submits, and this Court agrees, that a more informative case on the issue of requirements for pre-seizure hearings in forfeiture cases is *Calero-Toledo v. Pearson Yacht*, 416 U.S. 663 (1974). In *Calero-Toledo* the Supreme Court explained:

> In holding that lack of preseizure notice and hearing denied due process, the District Court relied primarily upon our decision in *Fuentes v. Shevin, supra.* *Fuentes* involved the validity of Florida and Pennsylvania replevin statutes permitting creditors to seize goods allegedly wrongfully detained. A writ of replevin could be obtained under the Florida statute upon the creditor's bare assertion to a court clerk that he was entitled to the property, and under the Pennsylvania statute, upon filing an affidavit fixing the value of the property, without alleging legal entitlement to the property. *Fuentes* held that the statutory procedures deprived debtors of their property without due process by failing to provide for hearings "'at a meaningful time.'" 407 U.S., at 80.

> *Fuentes* reaffirmed, however, that, in limited circumstances, immediate seizure of a property interest, without an opportunity for prior hearing, is constitutionally permissible. Such circumstances are those in which

> "the seizure has been directly necessary to secure an important governmental or general public interest. Second, there has been a special need for very prompt action. Third, the State has kept strict control over its monopoly of legitimate force: the person initiating the seizure has been a government official responsible for determining, under the standards of a narrowly drawn statute, that it was necessary and justified in the particular instance." *Id.*, at 91.

> Thus, for example, due process is not denied when postponement of notice and hearing is necessary to protect the public from contaminated food, *North American Storage Co. v. Chicago*, 211 U.S. 306 (1908); from a bank failure, *Coffin Bros. & Co. v. Bennett*, 277 U.S. 29 (1928); or from misbranded drugs, *Ewing v. Mytinger & Casselberry, Inc.*, 339 U.S. 594 (1950); or to aid the collection of taxes, *Phillips v. Commissioner*, 283 U.S. 589 (1931); or the war effort, *United States v. Pfitsch*, 256 U.S. 547 (1921).

> The considerations that justified postponement of notice and hearing in those cases are present here. First, seizure under the Puerto Rican statutes serves significant governmental purposes: Seizure permits Puerto Rico to assert in rem jurisdiction over the property in order to conduct forfeiture proceedings, thereby fostering the public interest in preventing continued illicit use of the property and in enforcing criminal sanctions. Second, preseizure notice and hearing might frustrate the interests served by the statutes, since the property seized -- as here, a

7

yacht -- will often be of a sort that could be removed to another jurisdiction, destroyed, or concealed, if advance warning of confiscation were given. And finally, unlike the situation in *Fuentes*, seizure is not initiated by self-interested private parties; rather, Commonwealth officials determine whether seizure is appropriate under the provisions of the Puerto Rican statutes. In these circumstances, we hold that this case presents an "extraordinary" situation in which postponement of notice and hearing until after seizure did not deny due process.

*Id.* at 678-680.

Subsequently, the Supreme Court explained:

In *Calero-Toledo v. Pearson Yacht Leasing Co.*, 416 U.S. 663 (1974), the Court upheld a Puerto Rico statute modeled after a federal forfeiture statute, 21 U.S.C. § 881(a), which allowed Puerto Rican authorities to seize, without prior notice or hearing, a yacht suspected of importing marihuana. *Pearson Yacht* clearly indicates that due process does not require federal customs officials to conduct a hearing before seizing items subject to forfeiture. Such a requirement would make customs processing entirely unworkable. The government interests found decisive in *Pearson Yacht* are equally present in this situation: the seizure serves important governmental purposes; a preseizure notice might frustrate the statutory purpose; and the seizure was made by government officials rather than self-motivated private parties.

*United States v. $8,850.00*, 461 U.S. 555, 563 fn. 12 (1983).

The Supreme Court has been clear that due process does not require federal customs officials to conduct a hearing before seizing items subject to forfeiture. Therefore, the Court concludes that the Claimant was not entitled to a pre-seizure hearing.

**B. Post-Seizure Delay**

The Claimant next argues that the length of delay between the seizures and the filing of this forfeiture action denied it due process of law. Due process requires "that an individual be given an opportunity for a hearing before he is deprived of any significant property interest." *Boddie v. Connecticut*, 401 U.S. 371, 379 (1971). As this Court has already pointed out in

8

dismissing Case Number 2:10-CV-161, the filing of a forfeiture action is sufficient to protect the Claimant's due process rights. (2:10-CV-161, Doc. 42, at 9–10) ("Because a 'forfeiture proceeding, without more, provides the postseizure hearing required by due process to protect [Plaintiff's] property interest in the [seized merchandise],' [*United States v. VonNeumann*], 474 U.S. [242,] 249 [(1986)], the Court finds that Plaintiff's due process rights are sufficiently protected."). Therefore, the length of delay that is at issue here, (*i.e.*, between the forfeitures and the filing of the forfeiture action), is 19 to 21 months.

The standard this Court must utilize to determine whether there has been a Fifth Amendment due process violation by a delay in filing a civil forfeiture action is set out in *United States v. $8,850.00*, *supra*, which requires the Court to weigh the four *Barker v. Wingo*, 407 U.S. 514 (1972) factors utilized in a Sixth Amendment speedy trial analysis. That test requires the Court to balance four factors: "length of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant." 461 U.S. at 564. "[N]one of these factors is a necessary or sufficient condition for finding unreasonable delay." *Id.* at 565. Instead, the factors are guides to be used in balancing the interests of the Claimant and the Government to assess whether the due process requirement of fairness have been satisfied. *Id.* at 565.

Initially, the Court finds that the Claimant promptly asserted its claims to the defendant merchandise. As to the length of delay, the Supreme Court has explained that "there is no obvious bright line dictating when a postseizure hearing must occur." *$8,850.00*, 461 U.S. at 562. Here, a delay of 19 to 21 months is significant; however, under the specific facts of this case, the Court finds that the length of delay did not rise to a constitutional deprivation. The other two factors—the reason for the delay and prejudice to the Claimant—combine to tilt the scale in

9

favor of a finding of constitutionality.

With regard to the reasons for the delay, the Government points out that this case involves multiple shipments over a two month period. The defendant merchandise includes twenty-three separate items all of which required inspection by technically qualified personnel in addition to the inspections done by CBP personnel and comparison of the results of those inspections with the specifications which claimant had earlier submitted for those items. The Claimant was aware that there were questions about the defendant merchandise early in the process and communicated with the agencies through counsel in an attempt to resolve the issues.

Further, the Court agrees with the Government that the Claimant's actions in twice filing suit seeking a judicial determination that the defendant merchandise should be admitted delayed the initiation of the forfeiture by a minimum of 6 months; the period between filing of the instant action on February 11, 2010 and the dismissal of the first seven claims on August 10, 2010. In this regard, the Court finds *Ancient Coin Collectors Guild v. U.S. Customs and Border Protection, Dept. of Homeland Security*, 801 F. Supp.2d 383 (M.D. Md. 2011) instructive. In that case, the court reasoned that there was no due process violation caused by the Government's failure to file a forfeiture action during the time period subsequent to an importer filing suit seeking a resolution of the same issues that would be involved in the forfeiture action during the pendency of the importer's case. *Id.* at 415–16.

"The primary inquiry [as to prejudice] is whether the delay has hampered the claimant in presenting a defense on the merits, through, for example, the loss of witnesses or other important evidence." *$8,850*, 461 U.S. at 569. The Claimant's argument concerning prejudice is strictly economic, *i.e.*, new regulations have now allegedly made it more expensive for the Claimant to

10

market the defendant merchandise, requires the posting of a minimum $500,000 cash bond, and will require modifications and other costly compliance expenditures. That is not the type of prejudice with which the Court is here concerned. Indeed, in most forfeiture actions a claimant could argue that seizure of the property economically damages the claimant. The prejudice with which the Court is concerned is whether the Claimant will be hindered from presenting its defense, which it does not contend is a concern. Indeed, the sole issue for determination in the forfeiture action is the Claimant's ability to establish that the defendant merchandise is compliant with the various regulations. That evidence either does, or does not, exist.

## C. Notice

The Claimant contends that it should be granted summary judgment and be permitted to take possession of the seized defendant merchandise because it was denied its statutory right to meaningful information about its property and its right to due process of law. Specifically, the Claimant argues that the Government violated 19 U.S.C. § 1499 because it did not provide the required Notice of Detention of the defendant merchandise. That statute requires CBP to issue "a notice to the importer or other party having an interest in detained merchandise no later than 5 days, excluding weekends and holidays, after the decision to detain the merchandise is made." 19 U.S.C. § 1499(c)(2).

Here, it is not disputed that the Claimant had actual notice of the violations as is shown by its counsel's August 28, 2009, Proposed Settlement Offer. Further, while it appears that the Government did not strictly comply with the statutory notice requirements, the Supreme Court has expressed that it "would be most reluctant to conclude that every failure of an agency to observe a procedural requirement voids subsequent agency action, especially when important

11

public rights are at stake." *Brock v. Pierce County*, 476 U.S. 253, 260 (1986).  Requiring that imported goods comply with the Clean Air Act and/or the National Highway Traffic Safety Act involves important public rights.

Moreover, in this case, the result of the Claimant's request is for this Court to order the release of potentially dangerous goods into the stream of commerce.  The Supreme Court has cautioned against such a result, stating that "if a statute does not specify a consequence for noncompliance with statutory timing provisions, the federal courts will not in the ordinary course impose their own coercive sanctions." *United States v. James Daniel Good Real Property*, 510 U.S. 43, 63 (1993).  Accordingly, even though the Government failed to strictly comply with the notice requirements of 19 U.S.C. § 1499(c)(2), the Court does not find a statutory due process violation sufficient to require the release of the defendant merchandise.

## IV.  CONCLUSION

For the reasons set forth above, the Court **DENIES** Claimant's Motion for Summary Judgment.  (Doc. No. 12.)

**IT IS SO ORDERED.**

__9-27-2012__
**DATE**

**EDMUND A. SARGUS, JR.**
**UNITED STATES DISTRICT JUDGE**

12